IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

PHILLIP N.,[1]

                Plaintiff,

    v.

COMMISSIONER, Social Security
Administration,

                Defendant.

Case No. 1:18-cv-01245-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

Plaintiff Phillip N. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for disability insurance

benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of
non-government parties and their immediate family members.

to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* (Docket No. 8). For the reasons that follow, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on November 7, 2013, alleging an amended disability onset date of November 7, 2013. Tr. 19, 81–82.[2] His application was denied initially and upon reconsideration. Tr. 84, 99. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on May 8, 2017. Tr 39–83, 127. On June 6, 2017, an ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 19–33. The Appeals Council denied plaintiff's request for review on May 7, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1963, plaintiff was 50 years old on his amended alleged onset date and 53 years old on the date of his hearing. Tr. 46, 84. He has an associate degree in automotive technology and has past relevant work as an automobile service manager, vocational instructor, maintenance dispatcher, automobile body repairer, and automobile mechanic. Tr. 32, 72–76, 206. He alleged disability based upon sacroiliac joint disfunction; back disc problems at L5–S1 and L4–L5; pain in his right knee; post-traumatic stress disorder ("PTSD"); and depression. Tr. 84, 206–08.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d

---

[2] "Tr." citations are to the Administrative Record. (Docket No. 16).

498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or

mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity during the period of his alleged onset date through his date of last insured. Tr. 21. At step two, the ALJ found that plaintiff had had the following severe impairments: degenerative disc disease of the lumbar spine; severe degenerative joint disease in his right knee; fibromyalgia; and lupus. Tr. 21.

At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. Tr. 25. The ALJ found that plaintiff had the RFC to perform sedentary work, with the following limitations: he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; he can frequently balance, occasionally stoop, and never kneel, crouch, or crawl; and he should avoid concentrated exposure to hazardous machinery and unprotected heights. Tr. 25–26. Because the ALJ found that plaintiff could perform his past relevant work as a maintenance dispatcher, he did not proceed to the fifth step of the sequential analysis. Tr. 32. The ALJ thus found plaintiff was not disabled within the meaning of the Act. Tr. 33.

## ANALYSIS

Plaintiff asserts the ALJ erred by: (1) failing to find plaintiff's alleged mental impairments severe at step two; (2) failing to provide clear and convincing reasons for rejecting his subjective symptom testimony; (3) failing to provide germane reasons for discounting the lay witness statements of plaintiff's wife and mother; (4) erroneously evaluating the medical opinion evidence; and (5) as a result of these purported errors, failing to include all of his limitations in the hypothetical presented to the vocational expert ("VE"). The Court addresses each argument in turn.

## I.    Step Two

Plaintiff argues the ALJ erred in finding his mental impairments, specifically, his generalized anxiety disorder, panic disorder, and depression non-severe at step two. At step two, a claimant must make a threshold showing that (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Yuckert*, 482 U.S. at 146; 20 C.F.R. § 404.1520(c).

To evaluate the severity of a mental impairment at steps two and three, the ALJ must follow a special psychiatric review technique described at 20 C.F.R. § 404.1520a. That technique requires the ALJ to rate the degree of a claimant's limitations in four broad functional areas: the ability to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c). The regulations further provide that where an ALJ rates a claimant's limitations as "none" or "mild," the Agency "will generally conclude that [a claimant's] impairment(s) [are] not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* at § 404.1520a(d)(1).

The ALJ found that, although plaintiff's generalized anxiety disorder, depressive disorder, and PTSD were medically determinable, they "did not cause more than [a] minimal limitation in [plaintiff's] ability to perform basic mental work activities and were therefore nonsevere." Tr. 22. The ALJ then discussed the following medical evidence before rating the severity of plaintiff's impairments in the four functional areas. *Id.* at 22–24.

The ALJ noted that "[t]he evidence in the record [was] not consistent with [plaintiff's] allegations of severe mental symptoms and limitations." Tr. 22. The ALJ discussed neuropsychological testing from December 2012 that "showed normal findings in [plaintiff's] working memory, attention span, visual tracking and sequencing, ability to acquire and recall verbally presented information." Tr. 22–23 (citing Tr. 305). The examiner documented that plaintiff had "adequate attention, memory, visuospatial function, and working memory." Tr. 306.

The ALJ next discussed medical records from early 2013 that indicated plaintiff continued to work at his auto body shop. Tr. 23 (citing Tr. 661, 668). Those records further reflected that despite finding plaintiff's symptoms clinically significant, "[m]uch of the time he [was] able to

cope and function," though at other times he was "ineffective at or unable to work and carry on in responsibilities." Tr. 668. The ALJ also considered medical records from plaintiff's treating provider, Edward Groenhout, M.D., in which the doctor wrote that, notwithstanding "considerable stressors in his life," plaintiff was "doing about as well as anyone would under the circumstances," and was "dealing pretty well with major life stressors[.]" Tr. 23 (citing Tr. 406).

The ALJ further noted that many of plaintiff's "mental impairments [arose] from personal stressors that fluctuated with increased stressors but generally were well controlled with medication." Tr. 23. A review of Dr. Groenhout's treatment records confirms that plaintiff's mental impairments were largely controlled with medication. *See, e.g.*, Tr. 408 (reporting clonazepam "works well"); Tr. 411 (reporting anxiety as "stable" with clonazepam and that medication was "helping" depression); Tr. 418 (reporting plaintiff was "doing well from an anxiety standpoint" and "stable on medications"); Tr. 422 (noting plaintiff was "progressing toward good mental health" and that plaintiff was to continue "with counseling and . . . medication as prescribed"); Tr. 423 (reporting "not as anxious and [plaintiff] is able to do more and worry less" after adjusting medication); Tr. 609 (reporting depression and PTSD as "stable" on medication); Tr. 621 (same); Tr. 624 (reporting PTSD as "stable" on medication); Tr. 656 (same); Tr. 659 (reporting plaintiff was "on cymbalta and doing well").

Next, the ALJ highlighted that, although Dr. Groenhout's treatment records "did not document mental status examination findings," other treatment providers reported that plaintiff's mood was "jumpy and anxious," but that his memory was intact and plaintiff was alert and oriented. Tr. 23 (citing Tr. 504). The ALJ then discussed medical records from a psychological assessment in which plaintiff reported experiencing situational stressors stemming from his divorce as well as his relationship with his daughter. Tr. 23 (citing Tr. 782–87). The doctor

diagnosed depressive disorder and assessed a Global Assessment of Functioning ("GAF") score of 56.[3] Tr. 787.

The ALJ also discussed four therapy sessions plaintiff attended with licensed clinical social worker ("LCSW"), Steven Tucker. Tr. 23–24 (citing Tr. 776–781). Plaintiff again discussed his relationship with wife and daughter. Tr. 777. In mental status examinations at three of his appointments, plaintiff presented with a numb, sad, and frustrated mood; a restricted affect; largely good eye contact and soft-spoken speech; difficulty with concentration; and logical and goal-oriented thought processes. Tr. 777, 779, 780. The ALJ also discussed plaintiff's report to LCSW Tucker of a planned trip to Texas, plaintiff's "fail[ure] to show up to his last scheduled appointment," and his ability to "track his medical history . . . via [an] Excel" spreadsheet in support of his step two findings. Tr. 24.

Finally, the ALJ rated plaintiff's limitations as "mild" in each of the four broad functional areas. *Id*. Accordingly, the ALJ found plaintiff's mental limitations were non-severe. *Id*. (citing 20 C.F.R. § 404.1520a(d)(1) ("[i]f we rate the degrees of your limitation as 'none; or 'mild,' we will generally conclude that your impairment(s) is not severe")).

---

[3] The Ninth Circuit has explained that GAF scores are relevant to the disability assessment because they are "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). However, the court further explained that "GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability[.]" *Id.*; *see also Skelton v. Comm'r of Soc. Sec.*, No. 06:13-cv-01117–HZ, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") abandoned the GAF scale for several reasons, including "its lack of conceptual clarity" and "questionable psychometrics in routine practice"). According to the Fourth Edition of the DSM, "[a] GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." *Garrison*, 759 F.3d at 1002 n.4 (quoting DSM-IV). The Court notes that the record contains an additional GAF score of 48, which appears twice in the record. Tr. 327, 667. This Court has considered plaintiff's GAF scores pursuant to the DSM-IV as required by *Garrison*. 759 F.3d at 1003 n.4.

Plaintiff offers an alternative interpretation of the medical evidence, and argues the ALJ erred in failing to find plaintiff's mental impairments severe. The Court agrees that the record is susceptible to more than one interpretation. For example, one of the treatment notes the ALJ relied on expressly noted that plaintiff had "long battle[d] with stress, anxiety, and depression" and that plaintiff "need[ed] better psychiatric care." Tr. 504. However, where the evidence is susceptible to more than one rational interpretation, courts defer to an ALJ's conclusion. *Burch*, 400 F.3d at 679; *see also Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (explaining that variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record). As such, the Court finds the ALJ's interpretation of the record rational and must therefore be upheld.

The ALJ's step two finding is affirmed.

## II.  Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is

supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Social Security Ruling ("SSR") 16-3p clarified that ALJs are not tasked with "examining an individual's character" or propensity for truthfulness, and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole. *See* SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's subjective symptom analysis "is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citation omitted).

The ALJ found that, although plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." Tr. 30.

The Commissioner relies on two rationales in support of the ALJ's evaluation of plaintiff's subjective symptoms testimony: (1) plaintiff's purported conservative treatment; and (2) the ALJ's determination that the medical evidence was inconsistent with the severity of plaintiff's allegations. Def.'s Br. 11–12.

The Commissioner's first rationale is not a clear and convincing reason to discount plaintiff's subjective symptom testimony because the ALJ never made a finding that plaintiff's treatment was conservative. This Court may not affirm on a ground not invoked by the agency in its decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the

reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").[4]

As for the Commissioner's second rationale, the ALJ's finding "that the medical evidence [was] not consistent with [plaintiff's] allegations of severity" was a clear and convincing reason to discount plaintiff's testimony. Tr. 27. The ALJ thoroughly discussed the treatment records related to plaintiff's reports of knee and back pain and cited evidence that was inconsistent with the severity plaintiff alleged. *See* Tr. 27–30 (citing Tr. 384 (presenting with antalgic gait, but normal range of motion, no effusion, and stable ligaments on physical examination); Tr. 380–81 (presenting with antalgic gait, but stable ligaments and reporting "less symptoms at this time"); Tr. 366–67 (presenting with antalgic gait, tenderness in sacroiliac joints, and pain with range of motion in lumbar spine, but full strength in his lower extremities, and normal reflexes); Tr. 773–74 (presenting with normal gait, full strength in lower extremities, intact sensations, normal reflexes and assessing "mild degenerative disc disease "at L45 and L5S1 levels without radiculopathy," and that "history and exam seem[ed] to suggest pain is coming from muscle and ligaments," recommending physical therapy); Tr. 504 (presenting with normal gait and good stability, range of motion, strength in all joints with the exception of moderate effusion in right knee); Tr. 492 (presenting with normal gait and good stability, range of motion, strength in all joints with the exception of mild effusion in right knee); Tr. 487 (presenting with normal gait and

---

[4] To the extent the Commissioner seeks to characterize the ALJ's general discussion of one treating provider recommending "physical therapy and other non-operative treatment modalities" as a finding of "conservative treatment," the record—and the ALJ's decision—reflects that plaintiff received conflicting recommendations from physicians as to whether surgical intervention was appropriate. *See* Tr. 27–28; *see also* Tr. 364–65 (discussing conflicting surgical and non-surgical treatment recommendations). Moreover, courts in this district have explained that a claimant "cannot be faulted for not pursuing surgical intervention where surgery [is] not recommended," *Harrison v. Astrue*, No. 3:11-cv-365-MA, 2012 WL 527419, at *7 (D. Or. Feb. 16, 2012) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

good stability, range of motion, strength in all joints with the exception of mild effusion in right knee and small effusion in left knee); Tr. 700 (presenting with "slight limp" and medial and lateral joint line tenderness, but full range of motion, and stable ligaments)).

These treatment notes are inconsistent with the level of severity alleged by plaintiff and were therefore clear and convincing reasons to discount plaintiff's subjective symptom testimony relating to knee and back pain. *See Christon B. v. Berryhill*, No. 3:17-cv-01603-SB, 2018 WL 6626539, at *8 (D. Or. Nov. 30, 2018) (holding that ALJ's discussion of unremarkable examination findings immediately following the ALJ's conclusion that the claimant's testimony was "not consistent with the claimant's allegations of disabling symptoms and limitations" was a clear and convincing reasons to reject testimony), *report and recommendation adopted*, 2018 WL 6625050 (D. Or. Dec. 18, 2018).[5]

Finally, the ALJ properly discounted plaintiff's complaints of neuropathy and pain in his feet. Tr. 30. The ALJ discussed electromyography testing that "suggested [plaintiff was] developing neuropathy." Tr. 30 (citing Tr. 714). However, the ALJ noted that in the same test plaintiff "denied numbness and tingling of the feet," had normal balance, and therefore concluded plaintiff was asymptomatic. *Id.* The ALJ's conclusion that plaintiff's allegations were inconsistent "with the evidence in the record" based on this evidence was rational. *Burch*, 400 F.3d at 679.

---

[5] Plaintiff's reliance on *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015), is unpersuasive. Although the ALJ's decision could have more clearly articulated what evidence was inconsistent with plaintiff's subjective symptom testimony, as discussed above, the Court is able to "reasonably discern" the ALJ's path. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015); *see also Alaska Dep't of Envtl. Conservation*, 540 U.S. at 497 (explaining that "[e]ven when an agency explains its decision with less than ideal clarity, [the court] must uphold it if the agency's path may reasonably be discerned") (quotation omitted); *see also Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (finding analogous reliance on *Brown-Hunter* "unavailing" where the court was "able to 'reasonably discern' the ALJ's path") (citation omitted).

The ALJ's evaluation of plaintiff's subjective symptom testimony is affirmed.

### III.   Lay Witness Testimony

Plaintiff alleges that the ALJ improperly rejected the lay witness testimony of his mother and wife. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r,* 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). Further, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless error. *Molina*, 674 F.3d at 1121–22.

Plaintiff's wife, Margaret N., completed a function report in March 2014. *See* Tr. 242–48. She explained that, among other things, plaintiff could not stand or walk for more than approximately 30 minutes at any one time, required frequent rest breaks, and had chronic pain. Tr. 242. She checked boxes indicating that plaintiff's conditions effected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, and use his hands. Tr. 247. Further, she wrote that plaintiff did not get along with authority figures, handled stress poorly, and that plaintiff's medications caused drowsiness. Tr. 247–48.

Plaintiff's mother, Laney N., submitted a letter in support of his disability claim. *See* Tr. 248. She wrote that plaintiff's back pain precluded him from bending, crawling, or lifting heavy items as required for his former business "restoring antique cars[.]" *Id.* She explained that plaintiff "could no longer stand without severe pain" and had "difficulty sitting for any length of time." *Id.*

She wrote that plaintiff's hands shake "so badly it became impossible for him to hold wrenches, screws, and small items," that he was unable to write, and that he had difficulty concentrating as a result of stress. *Id.*

The ALJ assigned the statements little weight, concluding "the medical record [did] not corroborate the limitations described, and the report[s] parallel[ed] [plaintiff's] alleged limitations and thus [had] the same inconsistency problems" the ALJ described in relation to plaintiff's subjective symptom testimony. Tr. 32. These were sufficiently germane reasons to reject the third-party witness statements.

Inconsistency with the medical record is a sufficient reason to discredit lay testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Further, where an ALJ has provided clear and convincing reasons for rejecting a claimant's subjective symptom testimony, an ALJ may reject lay witness testimony that "largely echoe[s]" that testimony. *See James B. v. Berryhill*, No. 6:17-cv-1888-SI, 2018 WL 5786218, at *10 (D. Or. Nov. 5, 2018) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). As discussed above, the ALJ highlighted numerous treatment notes that were inconsistent with the severity of limitations alleged in the third-party statements, which largely echoed plaintiff's subjective symptom testimony that the ALJ properly rejected. *See* Tr. 27–30, 32; *see also Joseph O. v. Comm'r of Soc. Sec.,* No. 3:17-CV-01841-CL, 2019 WL 4561453, at *11 (D. Or. Sept. 3, 2019) ("Here, the ALJ identified the inconsistency after a thorough discussion of [the claimant's] subjective symptom testimony in which the ALJ cited specific medical evidence in the record while rejecting [the claimant's] reports of musculoskeletal pain. That was sufficient."), *report and recommendation adopted*, 2019 WL 4544265 (D. Or. Sept. 18, 2019).

The ALJ's evaluation of the lay witness statements is affirmed.

**IV.** **Medical Opinion**

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari,* 246 F.3d 1195, 1201 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physicians." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* "ALJ may reject the uncontradicted medical opinion of a treating physician only for 'clear and convincing' reasons supported by substantial evidence in the record." *Id.* (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216).

**A.** **Standard for Rejecting Medical Opinion Evidence**

Before reaching the merits of plaintiff's contentions regarding the weight assigned to the medical opinion evidence, the Court must first determine the appropriate standard the ALJ was required to meet in order to discount the opinions of plaintiff's treating physician and treating rheumatologist.

The Commissioner contends that the ALJ was required to provide only specific and legitimate reasons because the opinions were contradicted by the state reviewing doctors. Def.'s Br. 7 n.1. In reply, plaintiff asserts that the ALJ was required to meet the more exacting clear-and-convincing standard because "when the opinion of a non-examining doctor is the only opinion which contradicts the treating doctors' opinions, the treating doctors' opinions are considered

uncontradicted, because the non-examining doctor's opinion is not substantial evidence[.]" Pl.'s Reply 4–6 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984)).

Plaintiff's assertion is misplaced in light of the Ninth Circuit's decision in *Widmark v. Barnhart*, 454 F.3d 1063, 1066 & n.2 (9th Cir. 2006). There, the court found the conflict between a doctor's opinion that the claimant had certain manipulative limitations and the "brief, conclusory opinion of the state agency reviewing physician who indicated that [the claimant] had no manipulative limitations" sufficient to require that the ALJ provide only "specific, legitimate reasons" to reject the doctor's opinion. *Id.* at 1066–67; *see also Angela Y. v. Comm'r, Soc. Sec. Admin.*, No. 3:17-cv-01954-HZ, 2019 WL 281291, at *8 n.3 (D. Or. Jan. 21, 2019). However, the court cautioned that "[a]lthough [the reviewing doctor's] opinion may suffice to establish a conflict among the medical opinions, it alone cannot constitute substantial evidence for rejecting" the opinion of a treating or examining doctor. *Id.* at 1066 n.2 (citing *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996)).

Here, as will be discussed in greater detail below, plaintiff's treating physician and treating rheumatologist both opined that he was disabled and did not provide any specific functional limitations. Tr. 400, 717–18. In other words, both doctors concluded that plaintiff was incapable of working at any exertional level. Those conclusions are at odds with the opinions of state reviewing doctors Lloyd H. Wiggins, M.D., and Martin Kehrli, M.D., who both opined that plaintiff was capable of performing less than light work with, *inter alia*, standing and walking limitations. Tr. 92–95 (limiting plaintiff to: lifting and/or carrying 20 pounds occasionally and 10 frequently; four hours of standing and/or walking and six hours of sitting in an eight-hour workday), 108–12 (same); *see also* SSR 83-10, *available at* 1983 WL 31251 at *5 (January 1, 1983) (defining the characteristics of sedentary and light work). Such a conflict was sufficient to trigger the specific-and-legitimate standard under *Widmark*. Accordingly, the Court must next assess whether

the ALJ supplied specific and legitimate reasons to discount the opinions of plaintiff's treating physician and treating rheumatologist.

## B.    Treating Physician: Edward Groenhout M.D.

In a December 2013 treatment note, plaintiff's treating physician, Dr. Groenhout, wrote that plaintiff was "unable to work in any capacity." Tr. 400. The ALJ assigned the opinion little weight and supplied at least one specific and legitimate reason to discount the Dr. Groenhout's statement: it was unsupported by clinical findings.

An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and *inadequately supported by clinical findings*." *Bray*, 554 F.3d at 1228 (emphasis added); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Here, the ALJ highlighted that Dr. Groenhout's treatment notes "lack[ed] findings to support his opinion." Tr. 30; *see also id*. ("notations from Dr. Groenhout's appointments with [plaintiff] contain no or few clinical findings on [plaintiff's] physical or mental conditions"). Indeed, a careful review of the treatment notes from twenty-plus appointments between October 2012 and September 2015 relating to Dr. Groenhout, reveals the doctor conducted only seven physical examinations and the results from those exams do not support the conclusion plaintiff was unable to work in any capacity. *See* Tr. 419, 422, 424, 626, 632, 640, 657–58. This was a specific and legitimate reason to discount Dr. Groenhout's opinion.

Plaintiff's reliance on *Smolen*, 80 F.3d at 1273, and assertion that "[i]f the ALJ wished to know more about the basis for Dr. Groenhout's conclusion . . . then the ALJ should have recontacted Dr. Groenhout for clarification" is misplaced. An ALJ's obligation to develop the record arises only where the ALJ finds the record is insufficient to properly evaluate the evidence.

*Smolen*, 80 F.3d at 1288. Moreover, the Ninth Circuit has explained such a duty "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citation omitted). Here, the ALJ thoroughly discussed Dr. Groenhout's treatment notes and rejected the doctor's conclusory statement not because the record was insufficient; rather, the ALJ concluded the opinion was inadequately supported. And that conclusion is supported by substantial evidence. Although plaintiff may prefer an alternative interpretation of the medical evidence, the ALJ is responsible for . . . resolving conflicts in medical testimony, and for resolving ambiguities" in the record. *Garrison*, 759 F.3d at 1009.[6]

## C. Treating Rheumatologist: David Dryland M.D.

In April 2014, plaintiff sought treatment from a rheumatologist, Dr. Dryland, who treated plaintiff for lupus and fibromyalgia through at least the beginning of February 2017. *See* Tr. 461–510. In March 2017, Dr. Dryland completed a check-box medical source statement opining that it was "medically probable that [plaintiff's] inability to work due to his medical conditions related back to the end of 2012 and early 2013[.]" Tr. 718. The doctor also checked a box indicating that plaintiff's fibromyalgia and lupus rendered "him unable to work on a sustained, competitive and regular basis" since the end of 2013. Tr. 717.

The ALJ assigned the opinion little weight and supplied at least two specific and legitimate reasons to discount Dr. Dryland's opinion: (1) the limitations the doctor described were

---

[6] Because the Court concludes the ALJ's rejection of Dr. Groenhout's opinion based on a lack of support of clinical findings was a specific and legitimate reasons to discount the opinion, the Court need not discuss the alternative rationales articulated by the Commissioner.

inconsistent with the doctor's physical examinations; and (2) the opinion lacked specific functional limitations. Tr. 31.

An ALJ may discount an opinion that is "inconsistent with the medical records." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ noted that Dr. Dryland's "physical examinations of [plaintiff] documented moderate abnormalities not rising to the level of severity indicated" in his opinion and cited a June 2014 treatment note as an example. Tr. 31 (citing Tr. 504). At that appointment, Dr. Dryland assessed "[d]efinite fibromyalgia." *Id.* However, other than moderate effusion in plaintiff's right knee, a musculoskeletal exam revealed largely unremarkable findings and a mental status exam revealed that, despite an "anxious, jumpy" mood, plaintiff's memory appeared intact and he was alert and oriented. *Id.* Those findings are inconsistent with Dr. Dryland's opinion that plaintiff was completely disabled, which suffices as a specific and legitimate reason to discount Dr. Dryland's opinion. Although plaintiff offers an alternative interpretation of the medical evidence, the ALJ's interpretation is rational reading of the record and must therefore be upheld. *Burch*, 400 F.3d at 679; *see also Garrison*, 759 F.3d at 1009 ("The ALJ is responsible for . . . resolving conflicts in medical testimony, and for resolving ambiguities.") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

An ALJ may also "disregard a medical opinion that does 'not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity.'" *Kelsi R. v. Berryhill*, No. 6:17-cv-02046-MK, 2019 WL 2028531, at *6 (D. Or. May 8, 2019) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)). Here, Dr. Dryland's opinion simply lists plaintiff's rheumatological diagnoses and does not explain how those conditions translate into specific functional deficits. This was an additional specific and legitimate reason to discount Dr. Dryland's opinion. *Kelsi R.*, 2019 WL 2028531, at *6; *see also Meanel v.*

*Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) (concluding that the ALJ was not required to provide reasoning to reject a treating physician's opinion when that opinion did not contain any specific functional limitations).[7]

In sum, the ALJ supplied legally sufficient reasons for discounting the opinions of Drs. Groenhout and Dryland. The ALJ's evaluation of the medical evidence is affirmed.

## V.     Hypothetical Question to the VE

Finally, plaintiff challenges the ALJ's step four finding and argues the hypothetical posed to the VE failed to include all the limitations stemming from plaintiff's mental impairments, his subjective symptom testimony, the third-party statements, and the opinions of Drs. Groenhout and Dryland. An ALJ is required to include only those limitations that are supported by substantial evidence in the hypothetical posed to a VE. *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163–65 (9th Cir. 2001). As discussed above, however, the ALJ properly found plaintiff's mental impairments non-severe at step two and properly evaluated the remaining evidence plaintiff challenges on appeal. As such, the ALJ's RFC, which limited plaintiff to sedentary work with additional limitations, and corresponding hypothetical to the VE reflected the limitations supported by substantial evidence.

The ALJ's step four finding is affirmed.

---

[7] Plaintiff's assertion that the "ALJ has not attempted to explain how Dr. Dryland's treatment notes are inconsistent with a diagnoses of fibromyalgia" is misplaced. Pl.'s Op. Br. 15; Pl.'s Reply 5–6. Significantly, the ALJ found plaintiff's fibromyalgia and lupus medically determinable and severe at step two. Tr. 21. Moreover, the ALJ was not required to explain how Dr. Dryland's treatment notes were not consistent with a diagnosis of fibromyalgia. Rather, the ALJ was required to—and did—provide legally sufficient reasons to reject Dr. Dryland's opinion in accordance with binding Ninth Circuit precedent. Finally, plaintiff's argument that the ALJ was obliged to re-contact Dr. Dryland fails for the same reasons that the ALJ was not obliged to re-contact Dr. Groenhout discussed *supra*.

## CONCLUSION

For these reasons, the Commissioner's decision denying plaintiff's application for DIB is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 9th day of December, 2019.

/s/ Patricia Sullivan

PATRICIA SULLIVAN
United States Magistrate Judge